Chief District Judge David G. Estudillo

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICHAEL WARREN,

Defendant.

NO. CR23-5085-DGE-12

UNITED STATES' SENTENCING
MEMORANDUM

Defendant MICHAEL WARREN appears before this Court for sentencing in the above-captioned case pursuant to his guilty plea on November 6, 2024, to conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). (Presentence Report (PSR) at ¶ 2; Plea Agreement at ¶ 1) The United States joins probation in recommending this Court sentence Warren to a 156-month term of imprisonment followed by a five-year term of supervised release, and a $100 special assessment. The government believes this sentence, which includes a significant downward variance from the applicable sentencing guidelines range, is sufficient, but not greater than necessary, to fulfill the sentencing goals set forth in 18 U.S.C. § 3553(a).

//

//

United States' Sentencing Memorandum - 1
United States v. Michael Warren, CR23-5085-DGE-12

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## I.    BACKGROUND

**A.    Offense Conduct**

**1.    Summary of Investigation**

In March 2023, the Federal Bureau of Investigation, the Drug Enforcement Administration, and other federal and local law enforcement agencies concluded a two-year investigation into drug trafficking focusing on two prison gangs, the Aryan Family and Omerta, which are predominately white prison gangs that have a presence both inside and out of prison facilities. (PSR ¶ 38.) These gangs engage in drug trafficking as one of their primary purposes, and the investigation identified numerous individuals affiliated with the gangs who were determined to have been involved in drug trafficking and money laundering, including the distribution of multi-pound quantities of methamphetamine, fentanyl, heroin, and cocaine throughout western Washington and other states. *Id.* The investigative team devoted substantial resources to identifying the organizational structure of the drug trafficking organization (DTO), including multiple rounds of court-authorized interceptions of wire and electronic communications, surveillance, the use of confidential informants, search warrants, and other investigative techniques. (PSR ¶¶ 39.)

Through this investigation, agents learned of three distribution cells who were working together as the Aryan Family/Omerta DTO: one led by Jesse Bailey, a second led by Bryson Gill (assisted by Michael Warren), and the third led by Yehoshua Kilp. (PSR ¶ 40.). During the investigation, agents seized an estimated 830,000 fentanyl pills, 223 pounds of methamphetamine, multiple-pound quantities of fentanyl powder, cocaine, heroin, and marijuana, $338,000 of suspected drug proceeds, and 48 firearms from members of the conspiracy. (PSR ¶ 42.) Many of those firearms were seized from Warren's residence. (PSR ¶ 50.) Additionally, during the coordinated arrests of the DTO members in March 2023, law enforcement seized approximately 22 pounds of

//

United States' Sentencing Memorandum - 2
*United States v. Michael Warren*, CR23-5085-DGE-12

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

methamphetamine, 26 pounds of fentanyl in pill and powder form, six pounds of heroin, more than $330,000 of suspected drug proceeds, and 177 additional firearms. (PSR ¶ 43.)

### 2.    Warren's Role in the DTO

Warren served as a redistributor, stash house manager, and pill press operator for Bryson Gill. (PSR ¶¶ 44-50.) Warren made multiple trips to Arizona on behalf of the Drug Trafficking Organization (DTO) to purchase large quantities of narcotics that he transported back to the Western District of Washington. (PSR ¶¶ 45, 46, 48.) On these trips, Warren occasionally communicated directly with the DTO's narcotics supplier to arrange for the drug deal. (PSR ¶ 46.) Text messages revealed that Warren sold some of these narcotics to other redistributors. (PSR ¶ 47.)

Intercepted communications, surveillance, and search warrants revealed that the DTO used Warren's residence as their main stash house where they stored their narcotics and manufactured fentanyl powder into counterfeit Oxycodone pills stamped with "M30" to mimic the imprint for prescription Oxycodone pills. (PSR ¶¶ 45-50.) At this residence, Warren, on behalf of the DTO, kept a residential vehicle where he and his co-conspirators stored two pill presses that the DTO used to manufacture counterfeit oxycodone pills laced with fentanyl. (PSR ¶ 50.)

According to intercepted communications, Warren knew how to operate the pill presses and was teaching Slocumb and Cervantes how to press the pills. (PSR ¶ 49.) Warren claims that he never used the pill press and was only feigning knowledge to stay important to the DTO, but this is inconsistent with the evidence. First, as detailed below, purchase records for the press indicate that a DTO co-conspirator, Cole Morehead, purchased the pill presses on March 31, 2021, which indicates that the DTO had been in possession of and using the press for over a year and a half before agents searched the residence. *See* Exhibit 1 (Morehead Due Diligence Form and Pill Press Order). As depicted below, financial records from Cole Morehead's Bank of America account show

//

two purchase transactions for a TPD 5 pill press on March 31, 2021 (for $2,792.72) and April 19, 2021 (for $4,916.26) paid to LFA Machines Bichester:

| 03/31/2021 | $2,792.72 | Transfer of funds from Bank of America account ending -3500 to LFA Machines Bichester in connection with purchase of TDP 5 pill press |
| 04/19/2021 | $4,916.26 | Transfer of funds from Bank of America account ending -3500 to LFA Machines Bichester in connection with purchase of TDP 5 pill press |

CashApp records from Jordan Gill (Bryson Gill's wife) and Family Enterprise, LLC (a business established by the DTO) reveal that the DTO sent $12,000 to Cole Morehead via CashApp between January 2021 and March 2022. Thus, it appears the DTO had been in possession of, and likely using, these pill presses (depicted below) for over 18 months before they searched Warren's residence on December 9, 2022.

 

*Equipment, scale, caffeine powder, pill presses, and other pill processing evidence*

Second, the stash house at Warren's residence was set up to produce massive amounts of pills. As noted above, the DTO possessed not one, but two pill presses, that were both capable of producing multiple pills at a time. These pills were marked with "M 30" to mimic the prescription insignia of Oxycodone pills. Further, as depicted in the

United States' Sentencing Memorandum - 4
*United States v. Michael Warren*, CR23-5085-DGE-12

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

photos below, the defendants bought mixing agents in mass quantities indicating that they had been or were prepared to produce large quantities of counterfeit fentanyl laced pills:



*Shotgun and bag of MSM (cutting agent)*




*Bulk Cutting/Bonding Agents*[1]

---

[1] The photograph on the left depicts a 25-kilogram bag of Methylsulfonylmethane (MSM) and the photo on the right depicts a large bucket of caffeine anhydrous powder. Both are common cutting/binding agents for mixing counterfeit pills.

United States' Sentencing Memorandum - 5
*United States v. Michael Warren*, CR23-5085-DGE-12

The weight of these cutting agents, which were only a portion of the cutting agents found on the property, demonstrate an intent to manufacture hundreds of thousands if not millions of counterfeit pills. A fentanyl pill only weighs about a tenth of a gram. Thus, the 25 kilograms of cutting/bonding agents in the bag alone is enough to produce over 250,000 pills.

Lastly, Warren's claim that he never operated the pill presses was refuted by intercepted calls between his own co-conspirators. Law enforcement intercepted a series of communications between Bryson Gill and Michael Slocumb on November 27, 2022, in which they discussed the need for mask and gloves because they were "about to break into it right now," which referred to them preparing to process fentanyl. (Exhibit 2 (selected linesheet call summaries) at page 2, session 128.) The following day, Slocumb called Gill because the pills weren't pressing correctly and complained that Warren's phone was off. *Id.* (Exhibit 2 at p. 3, session 217.) Gill agreed to call him. *Id.* Immediately after, Gill called Warren and told him that Slocumb was having problems with the machine and Warren agreed to call him back and help out. *Id.*

On December 9, 2022, agents executed a search warrant on the stash house. Inside, they found approximately 64 kilograms of fentanyl pills, amounting to approximately 640,000 pills (pictured below) and 23 firearms:



*64 Kilograms of Fentanyl Pills*



*Firearms from Warren's Residence*

United States' Sentencing Memorandum - 6
*United States v. Michael Warren*, CR23-5085-DGE-12

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Agents also recovered colored/flavored fentanyl pills (depicted below), approximately 15.6 kilograms of methamphetamine, a kilogram of fentanyl powder from the stash house, large amounts of ammunition, body armor, $81,036 in cash, two pill presses, and a silencer. (Plea Agreement ¶ 8.g.; PSR ¶ 50.)




*Ammunition*                    *Blue and colored fentanyl pills*

### *Warren Performed Poorly on Pretrial Release*

Warren was initially released under bond conditions that included an order to not consume controlled substances. (Dkt. 219.) On August 29, 2023, the Court issued a summons requiring defendant to appear for a bond violation for consuming methamphetamine on July 18 and August 10, 2023. (Dkt. 531.) Defendant lied to his probation officer and denied any drug usage. *Id.* At his violation hearing, Warren admitted to the violations, and the Court released Warren over the Government's objection. (Dkt. 554.) On May 20, 2024, the Court again issued a summons for Warren's use of methamphetamine on three different dates and failing to submit to a scheduled urinalysis test. (Dkt. 784.) Warren lied to his probation officer and again denied any drug usage. (Exhibit 3 – May 2024 Violation Report - filed under seal CrR55.) At the hearing,

United States' Sentencing Memorandum - 7
*United States v. Michael Warren*, CR23-5085-DGE-12

UNITED STATES ATTORNEY
1201 Pacific Ave., Suite 700
Tacoma, Washington 98402
(253) 428-3800

Warren finally admitted the violations and the Court revoked his pretrial release and ordered him detained pending trial. (Dkts. 791-792.)

**B.      Procedural History**

The grand jury indicted Warren with conspiracy to distribute controlled substances (Count 1) and possession of a controlled substance with intent to distribute (Count 6) on March 16, 2023. (Dkt. 1.) Warren was arrested and made his initial appearance on March 23, 2023. (Dkt. 127.) On November 6, 2024, Warren entered a plea of guilty to a lesser-included offense to Count 1 (conspiracy to distribute controlled substances), which lowered the mandatory minimum sentence from ten years to five years. (Dkts. 1017-1021.)

## II.      BACKGROUND ON SENTENCING

Under 18 U.S.C. § 3553(a), the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a)(2). There are four sentencing purposes set forth in Section 3553(a)(2): (1) just punishment or retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"); (2) deterrence ("to afford adequate deterrence to criminal conduct"); (3) incapacitation ("to protect the public from further crimes of the defendant"); and (4) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). *See Rita v. United States*, 551 U.S. 338, 348 (2007) (using these four terms); *see also Gall v. United States*, 552 U.S. 38, 50 n.6 (2007).

In determining a sentence that complies with these four sentencing purposes, a sentencing court must consider the "nature and circumstances of the offense and the history and characteristics of the defendant," the "kinds of sentences available," the Sentencing Guidelines range and Sentencing Commission's relevant policy statements, the "need to provide restitution to any victims of the offense," and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been

United States' Sentencing Memorandum - 8
*United States v. Michael Warren*, CR23-5085-DGE-12

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (3)-(7). When considering these factors, the Sentencing Guidelines range "should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49. Any deviation must be reasonable, and a "major departure" from the Guidelines range "should be supported by a more significant justification than a minor one." *Id.* at 50. Here, a downward variance is warranted considering defendant's difficult childhood, his advanced age, potential health issues, and his relative culpability in comparison to other defendants in this case. But the mandatory minimum five year sentence requested by defense cannot be justified in light of Warren's role in purchasing, transporting, manufacturing, and distributing hundreds of thousands and likely millions of fentanyl laced counterfeit oxycodone pills. As detailed below, a sentence of 156 months is the minimum sentence necessary to fulfil the sentencing goals of 3553(a).

### III.    SENTENCING GUIDELINES CALCULATIONS

### A.    Offense Level

#### 1.    The Base Offense Level

Warren played a central role in a drug trafficking organization (DTO) that was responsible for regularly purchasing, transporting, and distributing hundreds of thousands of fentanyl pills. In just one instance, captured by the FBI raid on Warren's residence, law enforcement seized over 640,000 fentanyl pills, a kilogram of fentanyl powder, and 15.6 kilograms of methamphetamine. These drugs were seized after the DTO made a trip to Arizona to purchase narcotics. Based on intercepted calls and historical phone location data, law enforcement know that this was only one of multiple trips that Warren and the DTO made to Arizona to pick up narcotics. Based on the quantity of narcotics, the parties stipulated to a base offense level of 38, the highest offense level available under the Drug Quantity Table of USSG § 2D1.1. (*See* Plea Agreement ¶ 9.a; PSR ¶ 55.)

Additionally, this Court should apply the following enhancements: (1) a two-level enhancement under USSG § 2D1.1 (b)(1) because Warren possessed a dangerous weapon

United States' Sentencing Memorandum - 9
*United States v. Michael Warren*, CR23-5085-DGE-12

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

(i.e. multiple firearms) in connection with the offense; (2) a two-level enhancement under USSG § 2D1.1(b)(12) because the defendant maintained a premises (his residence and the RV) for the purpose of distributing a controlled substance; and (3) a four-level enhancement under USSG § 2D1.1(b)(13) because the defendant knowingly misrepresented or marketed as another substance a mixture or substance containing fentanyl or a fentanyl analogue.[2] (Plea Agreement ¶ 9.a-c; PSR ¶¶ 56-58.)

The government moves the Court to apply a three-level reduction because the defendant has demonstrated acceptance of responsibility for the offense under USSG 3E1.1(a) and (b). With this adjustment, Warren has a total offense level of 43. (PSR ¶ 66.)

**B.      Defendant's Criminal History**

The Government agrees with the Probation Office that Warren's prior criminal convictions do not score criminal history points because they became final more than ten years before the current offense and the sentences imposed did not exceed one year and one month. USSG § 4A1.1. Thus, Warren is in Criminal History Category I. (PSR ¶¶ 68-71.)

**C.      Guidelines Range**

Based on a total offense level of 43 and criminal history category I, the guidelines sentencing range is life imprisonment.

**IV.      FACTORS RELATED TO SENTENCING RECOMMENDATION**

The United States respectfully requests that the Court sentence Warren to 156 months in custody followed by a five-year term of supervised release. The United States believes this sentence sufficient, but no greater than necessary in light of "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of

---

[2] The government distinguishes Warren from other defendants who received a two-level enhancement under USSG § 2D1.1(b)(12) because Warren willfully took part in the production of fentanyl-laced counterfeit prescription pills, as compared to other defendants who merely exhibited willful blindness that the materials they were selling were marketed as prescription oxycodone despite being laced with fentanyl.

United States' Sentencing Memorandum - 10
*United States v. Michael Warren*, CR23-5085-DGE-12

the offense, to promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C). A review of pertinent Section 3553(a) sentencing factors, below, supports the jointly recommended sentence.

## A.    Nature and Circumstances, and Seriousness of the Offense

Warren played a central role in purchasing and distributing massive quantities of fentanyl pills, fentanyl powder, and methamphetamine in partnership with Bryson Gill. Additionally, he assisted the DTO by allowing them to use his residence as a stash house and teaching them to use the pill press to manufacture fentanyl laced counterfeit oxycodone pills. Warren claims that he did this out of fear of the DTO, but there is no evidence to support his claim. Rather the claim is undermined by the fact that (1) Warren worked with this DTO for an extended period of time, (2) Warren's residence contained body armor, numerous firearms, and large amounts of ammunition he could have used to protect himself, and (3) he set up his own narcotics deals on the side and, at times, communicated directly with the DTO supplier. This trusted role is inconsistent with someone who is allegedly being "forced" into this criminal activity out of fear.

The damage that Warren's crime has caused our community is immeasurable. As this Court is all too aware, these drugs have a devastating impact on the community. Users of these drugs frequently resort to stealing—from family members, friends, and complete strangers—to feed their addictions. No doubt, drug users are responsible for a large percentage of these crimes, as well as the violent crimes, in our communities.

More importantly, these drugs destroy the lives of those who use them, and the lives of the users' families and friends. Those families and friends are prisoners, forced to watch the toll these drugs take on their sons, daughters, parents, or friends. While the number of people directly and indirectly impacted by the drugs Warren and his co-conspirators trafficked is difficult to quantify, it is undeniably extensive based on the sheer quantity of drugs distributed by this drug trafficking organization. These drugs

United States' Sentencing Memorandum - 11
*United States v. Michael Warren*, CR23-5085-DGE-12

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

undoubtedly fell into the hands of long-time addicts, first-time users, and everyone in between.

Especially with respect to first-time users of fentanyl, who are sometimes unaware that that the counterfeit oxycodone pills they are taking contain fentanyl, their lives are put at risk with every use of these dangerous substances. This has resulted in an unprecedented epidemic of overdose deaths in the United States, and an unrelenting increase in overdose deaths in Washington state. To illustrate, the National Center for Health Statistics, Centers for Disease Control, estimates that, despite a decrease in overdose deaths nationwide, Washington had an increase in overdose deaths of over 27% in the year ending December 2023. *See* Ken Alltucker, *Drug overdoses spiked in these states. But they have dropped elsewhere in the country.*, USA Today, May 15, 2024, available at: https://www.usatoday.com/story/news/health/2024/05/15/drug-overdose-deaths-2023-data/73670888007/ (last accessed January 24, 2025).

As this Court is aware, the scale of the problem is massive. The Washington State Department of Health (DOH) tracks opioid and drug use data which demonstrates a crisis in number of drug-related overdose deaths occurring statewide over the past several years, as illustrated by the graphic published by the DOH on their website, below:



United States' Sentencing Memorandum - 12
*United States v. Michael Warren*, CR23-5085-DGE-12

UNITED STATES ATTORNEY
1201 Pacific Ave., Suite 700
Tacoma, Washington 98402
(253) 428-3800

Washington State Department of Health, *Opioid and Drug Use Data Dashboard*, available at: https://doh.wa.gov/data-and-statistical-reports/washington-tracking-network-wtn/opioids/overdose-dashboard (last accessed January 24, 2025). This data shows the number of drug overdose deaths occurring annually in the state more than doubled from 2019 to 2023.

The severity of Warren's crime and the potential impact it has had on the community demonstrates that the mandatory minimum sentence requested by defense is not justified under the sentencing factors. Rather, a sentence of 156 months, is sufficient but no greater than necessary to acknowledge the untold and devastating impact his crimes had on the community.

**B.      History and Characteristics of the Defendant**

Warren is currently 65 years old. As detailed in the presentencing report, Warren had a difficult childhood including physical and verbal abuse that led to him to start using narcotics at the age of 15. (PSR ¶ 95-98.) Warren has multiple prior felony convictions for Theft in the First Degree and Theft in the Second Degree from 2005-2008. (PSR ¶ 68-69.) Unfortunately, unlike many defendants, Warren did not age out of his criminal conduct. Thus, the Court has no assurance that should Warren receive the mandatory minimum sentence as requested by defense, that he would not continue to distribute controlled substances at age 69 just like he did at age 64.

**C.      Similarly Situated Defendants**

Section 3553(a)(6) requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). But the inquiry is not district specific. Instead, Congress's "primary goal" with section 3553(a)(6) was promoting nationwide consistency in sentencing, *United States v. Jaycox*, 962 F.3d 1066, 1071 (9th Cir. 2020)—that is, to avoid "unjustified difference" across judges or districts, *United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007). The Guidelines, which are themselves

United States' Sentencing Memorandum - 13
*United States v. Michael Warren*, CR23-5085-DGE-12

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

an anti-disparity formula, are the best tool for achieving that goal. *See Gall v. United States*, 552 U.S. 38, 49, 54 (2007); *Rita v. United States*, 551 U.S. 338, 354 (2007); *United States v. Osinger*, 753 F.3d 939, 949 (9th Cir. 2014). In addition to the guidelines, the Court can rely on JSIN data to guide its decision by comparing the defendants who fall under similar provisions of the sentencing guidelines.

This Court has already sentenced multiple defendants in this criminal conspiracy and numerous other defendants have pleaded guilty with either joint sentencing recommendations or caps on the government's sentencing recommendation. Sentencing Warren to 156 months in custody would be consistent with the sentences this Court has already imposed in this case as well as the recommendations contained in plea agreements accepted by this Court that are still pending sentencing. For ease of comparison, the government has created a chart outlining the pleas that have been accepted and the relative sentences imposed. *See* Exhibit 4 – Sentencing Chart. Notably, Warren's guideline range of life is higher than Thompson, Cervantes, and McComb.

## V.    CONCLUSION

For all the reasons set forth above, the government respectfully recommends the Court impose a custodial sentence of 156 months, to be followed by a five-year term of supervised release, and a $100 special assessment.

DATED this 31st day of January, 2025.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

*/s/ Zachary Dillon*
MAX B. SHINER
ZACHARY W. DILLON
Assistant United States Attorneys
1201 Pacific Ave., Suite 700
Tacoma, Washington 98402
Phone: 253-428-3822
Fax: 253-428-3826
Email: Zachary.Dillon@usdoj.gov

United States' Sentencing Memorandum - 14
*United States v. Michael Warren*, CR23-5085-DGE-12